## BAHAM *vs.* BACH.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE WATTS
PRESIDING.

Auctioneers are public officers, and in making public sales are bound to have
from the seller or owner of the property, the terms and conditions in
writing, which they are to proclaim in a loud and audible voice to the
bystanders, and to offer the property publicly for sale.

From the time the auctioneer declares the highest bidder to be the pur-
chaser, and the thing sold is adjucated to him, the contract is subjected
to the same rules which govern the ordinary contract of sale.

Combinations at auction sales, to enhance the price by false bids, or depress
it by false assertions, are artifices which invalidate the contract, when
practised by those who are parties to it.

The owner of property may withdraw it before the highest bid is accepted
by the auctioneer, but he has no right to bid himself, unless he publicly
reserves this right; still less can he bid through the auctioneer.

So, where the price of property was limited, which fact was not communi-
cated to the bidders, and the auctioneer advanced on the bid, until it
reached the limits prescribed by the owner, and was adjudicated to the
defendant: *Held,* that the sale was null and void as to the purchaser.

The plaintiff sues to compel the defendant to comply with
the terms of an auction sale and adjudication of certain lots

BAHAM
*vs.*
BACH.

of ground in the faubourg Livaudais, and which were bid off to him as the last and highest bidder.

It is shown by the evidence that the plaintiff, the wife of L. Lesassier, was owner of certain lots of ground in the faubourg Livaudais, and being desirous of selling a portion of them, on the 6th March, 1837, advertised for sale four lots, describing them minutely, and, also, referring to a plan of them, which was to be exhibited on the day of sale ; and likewise fixed the day on which they were to be sold at public auction.

At the time and place of sale, the defendant, Bach, who it appears was well acquainted with the adjacent ground, attended and bid at the sale. The auctioneer, it seems, had received written instructions from the husband of the plaintiff, by which the lots were limited at the price of two thouand dollars each. But these instructions were not communicated to the bystanders or bidders. The defendant bid off three lots, one at two thousand and fifty dollars, the other two at two thousand dollars each. He has since refused to take them or comply with the sale, because there was no actual bidders besides himself, and that agents or puffers, were employed to bid against him.

The auctioneer who made the sale, deposed that he advanced on the bids made by others, until he run them up to the limitation, in pursuance of his written instructions. The defendant was the last and highest bidder for the lots in question.

On this evidence and state of the case, the district judge was of opinion the plaintiff ought not to take any thing by her suit. Judgment was given for the defendant, and the plaintiff appealed.

*L. C. Duncan*, for the plaintiff.

*Preston, contra.*

*Eustis, J.*, delivered the opinion of the court.

The petitioner alleges, that with the authority of her hus-

EASTERN DIST.

*April,* 1839.

BAHAM
*vs.*
BACH.

band, she sold certain lots of ground to the defendant at public auction; that she has signed and tendered to him an authentic act of sale of the property, which he refuses to execute. She prays that the sale at auction be decreed good and valid; that the defendant be ordered to accept and execute the act, and to pay the price and comply with the conditions of the sale.

The defendant, among other matters of defence, charges that the plaintiff, by her agents, bid against him at the sale at auction, and run up the property greatly beyond the bids of the real bidders: he prays for judgment and for general relief against the doings of the plaintiff.

The auctioneer stated in his examination, that the lots were limited to the sum of two thousand dollars each; that this was not communicated to the bidders, and that he advanced on the bids made by others, as we understand him, up to that sum; that it is customary for auctioneers, when they put up property which is limited, to start the sales and rise on their *own bids,* till they reach the limits prescribed by the owner.

There were many real bids besides that of the defendant; and in relation to the bidding off the property, there is nothing which affects the validity of the sale, except the fact of his bidding for the owner, as declared by him.

There was judgment for the defendant, and the plaintiff has appealed.

Our own code has provided, in express terms, for the manner in which sales at auction are to be conducted.

The auctioneer is a public officer: he is bound to have from the seller the terms and conditions of the sale in writing, to proclaim them at the sale in a loud and audible voice, and to offer the property publicly for sale. He is bound to receive the bids, and after waiting a reasonable time to ascertain the highest bid, he is bound to declare the person making it, to be the purchaser, and the thing sold is adjudicated to him. From that time the contract is subjected to the same rules which govern the ordinary contract of sale. *Louisiana Code, articles* 2584, 2585, 2586.

*Auctioneers are public officers, and in making public sales are bound to have from the seller or owner of the property, the terms. and conditions in writing, which they are to proclaim in a loud and audible voice to the bystanders, and to offer the property publicly for sale.*

EASTERN DIST.
*April,* 1839.

BAHAM
*vs.*
BACH.

From the time the auctioneer declares the highest bidder to be the purchaser, and the thing sold is adjudicated to him, the contract is subjected to the same rules which govern the ordinary contract of sale.

Combinations at auction sales, to enhance the price by false bids, or depress it by false assertions, are artifices which invalidate the contract, while practiced by those who are parties to it.

The owner of property may withdraw it before the highest bid is accepted by the auctioneer, but he has no right to bid himself. unless he publicly reserves this right; still less can he bid through the auctioneer.

In section 12, article 1841, it is provided, that combinations with respect " to sales to enhance the price by false bids or offers, or to depress it by false assertions, are artifices which invalidate the contract, when practiced by those who are parties to it, or give rise to an action of damages when they are not."

This provision of our laws, is in harmony with the principles first established on this subject in England, by Lord Mansfield, in the case of *Roxwell* vs. *Christie, Cowp.* 395. As was observed, subsequently, by Lord Kenyon, " the whole of the reasoning in that case is founded on the noblest principles of morality and justice, principles that are calculated to preserve honesty between man and man."

The decision in that case has not been followed in all cases, either in the jurisprudence of England or of the United States, but we apprehend that time and scrutiny will re-establish its force, wherever the principles of law and public morals are coincident.

As late as 1827, Lord Tenterden, in a case where the owner employed one person to bid for him, and he was only ordered to bid up to a certain sum, said : " I will add that the strong indication of my opinion is, that if only one person be employed to bid, with a view to save the auction duty, the sale is void ; unless it be announced that there is a person bidding for the owner, the act itself is fraudulent." 1 *Moody and Malkin,* 128. 22 *English Common Law Reports,* 268. 1 *Story's Equity Jurisprudence,* section 298, and cases there cited.

In the case of *Correjolles* vs. *Mossy,* 2 *Louisiana Reports,* 507, the Supreme Court of this State, held that an owner might withdraw his property before the highest bid was accepted by the auctioneer. But this gives the owner no right to bid, unless he publicly reserves to himself that right ; still less can he bid through the auctioneer. The duty of the auctioneer is to sell the property and to receive the bids offered, not to make them.

We do not censure the conduct of the auctioneer in this instance, because we are aware it is the general usage to

conduct sales at auction in this manner ; but it is an usage
which we can neither justify nor recognize in the adminis-
tration of justice. It is equally repugnant to public policy
and to that fairness which ought to exist, and which people
have a right to expect, in a sale of property avowedly offered
to the highest bidder.

Our opinion on this subject, renders it unnecessary to
examine the other question raised by the defendant.

It is, therefore, ordered, adjudged and decreed, that the
judgment of the District Court be affirmed, with costs in
both courts.