CASE 3—PETITION EQUITY—JUNE 16.

# Grotenkemper v. Achtermeyer & Co.

APPEAL FROM KENTON CHANCERY COURT.

1. PUBLIC SALES OR SALES BY AUCTION are governed by the same law as private contracts; the parties thereto must assent or agree, and the agreement must be obligatory and mutual.

2. BID MAY BE WITHDRAWN BEFORE IT IS ACCEPTED.—Every bid by any one present is an offer by him, and as soon as the hammer falls, or the bid is otherwise accepted, it becomes a contract; *but until it is accepted it may be withdrawn* by the bidder, because till then it is not obligatory on him for want of the assent of the owner of the property by his agent, the auctioneer. (1 Parsons on Contracts, 479; Downing v. Brown, &c., Hardin, 181.)

J. F. & C. H. FISK, . . . . . . . . For Appellant,

CITED

Benjamin on Sales, 35–37, 378–80.
Story on Agency, section 27.
Revised Statutes, Myers's Supp., p. 300, sec. 1.
2 Kent, page 537.
3 Term Rep. 148, Paine v. Cave.
1 Parsons on Contracts, p. 418, note *e*.
4 Bing. 653, Routledge v. Grant.
1 Bouv. Law Dic., "Auction," "Bidder."
3 Bush, 621, Thomas v. Kerr.
7 Ill. 614, Burke v. Haley.
6 Leigh, 16, Brent v. Green.
1 Met. 575, Smith v. N. Bank Ky.
5 Bush, 304, Gere v. Cushing, &c.
2 Swan, 316, Barnes v. Thompson.
2 Sneed, 268, E. T. Iron M. Co. v. Bynum.
53 Maine, 394, Horton v. McCarty.
38 Maine, 302, Pike v. Balch.
28 L. J. Q. B. 18, Warlow v. Harrison.
29 Conn. 267, Rose v. Perssee & Brooks Paper Works.
21 Cal. 80, Donahue v. Cromastie.

Grotenkemper v. Achtermeyer & Co.

GEO. G. PERKINS, . . . . . . . . . . For Appellees,

CITED

Myers's Supplement, page 300.
2 Swan (Tenn.) 313, Barnes v. Thompson.
2 How. (Miss.), 880, Buck v. Brian.
4 Met. 357, Johnson's ex'r v. Wiseman's ex'r.
2 Smith's Leading Cases, 248.
5 Dutcher, 550, Coddington v. Beebe.
3 Sneed, 268, E. T. Iron Man. Co. v. Bynum.
3 Watts, 140, Morgan v. Arthur.
5 Watts, 115, Wademan v. Thorpe.
9 Cal. 119, McGreery v. Osborne.
46 Mo. 595, Oster v. Rabeneau.
30 Penn. 122, Norris's Appeal.
62 Penn. 405, Robson's Appeal.
11 Wis. 119, La Crosse & Mil. R. R. Co. v. Vanderpool.
21 Cal. 80, Donahue v. Cromastie.
17 S. and R. 413, Gray v. Holdslip.

CHIEF JUSTICE PETERS DELIVERED THE OPINION OF THE COURT.

Various creditors of Achtermeyer & Co. having sued them severally, and having obtained attachments, all of which were levied on the property, real and personal, of Achtermeyer and Brinckman, who composed the firm of Achtermeyer & Co., all of said suits were in due time consolidated and prepared to be heard together.

Afterward such proceedings were had in the consolidated cases that a judgment was rendered for a sale of the real and personal estate of the said firm and the master directed to execute the judgment; and on the 13th of June, 1873, he filed his report of sale, in which, among other things, he states that in pursuance of the judgment he advertised time, place, and terms of sale by printed posters, and in the Cincinnati Daily Commercial, Daily Enquirer, Times, Chronicle, and Volksblatt newspapers, and on the 21st day of April, 1873, exposed to public vendue, on the premises, the distillery property as described in the pleadings, which being offered, "*the plaintiff*," bidding for Henry Grotenkemper, bid therefor $12,000; and

that being ·the highest bid obtained, at the instance of the plantiff, the sale was postponed to 29th of April, 1873, at which time, the postponement having being fully advertised, the master commissioner re-offered the said property on the premises, and the said Henry Grotenkemper, present in person, withdrew his said bid of $12,000, and thereupon the said Henry offered $7,050 for said property, and, no one making any better bid therefor, the said property was publicly struck off to the said Henry Grotenkemper at that bid for $7,050. Whereupon he, with John C. Schnell as his surety, executed his sale bonds upon the terms adjudged, which the master filed with said report.

On the 17th of June, 1873, Hoffman & Ahlers, creditors, and Achtermeyer, one of the firm of Achtermeyer & Co., filed joint exceptions to said report, and to the confirmation of the sale—

1. Because after a bid was made on the property of $12,000, at the instance and by the command of the *"purchaser"* and plaintiff Brinckman, the sale was postponed, when the bid was reduced to $7,050, and the property struck off to the same person who had previously bid.

2. The property was sold for less than one sixth of its real value.

3. Because the sale was not made on the day the same was advertised to be made.

At the same term of the court at which said exceptions were filed the following judgment was rendered: "The court having heard the evidence, it is ordered *that the bid of the purchaser,* Grotenkemper, of $12,000 be accepted as the highest and best bid, and that said purchaser execute his bonds for that amount bearing the same date as said bid," to which Grotenkemper excepted and prosecutes this appeal therefrom.

On the trial of the exceptions Helm, the master who made the sale, was introduced as a witness, and proved that the bid

of $12,000 made on the 21st of April, 1873, by Henry Brinck-
man for H. Grotenkemper, was on the 29th of April of the
month and year aforesaid withdrawn by said Grotenkemper in
person, that bid having been made, as he asserted, under a
misunderstanding and incorrect information as to the character
of the title to the property.   After the withdrawal of said bid,
as the witness proves, the property was offered for sale *de novo*
on the 29th of April, 1873, and the first bid made on it was
$7,000, the next bid was $7,050, by Grotenkemper, and no one
offering any more, it was struck off to him at that price. . H.
Brinckman, J. H. Hinken, J. G. Hinken, and Chas. H. Fisk,
attorney, and other parties, were present when the property was
first offered.   The first bid then made was $8,000; the next
bid was an advance of $4,000 by Brinckman for Henry Gro-
tenkemper. ˙ At the second offer of the property the per-
sons above-named were all present, and Grotenkemper also ʹ
attended on the last occasion.         · ·

J. H. Hinken was next examined, and proved that he
built the distillery nine years before, that the lot was worth
$1,200 and the improvements amounted to $9,000; other im-
provements have since been put on to the amount of $4,000
or $5,000; and the whole property in good order worth *"per-
haps"* $14,000.   He bid for it on both days.   A bid of $8,000
was made on the first day; then H. Brinckman bid $12,000
for it, in the name of and for H. Grotenkemper.

H. Grotenkemper was next examined, and proved that he
sent word to Gov. Fisk or H. Brinckman, if necessary, he
would bid $12,000 for the property.   He did so under the
belief that the title was entirely clear and unencumbered, and
that the amount would be credited on his judgment against
Achtermeyer and Brinckman in this case; that after he heard
of Herman Hinken's mortgage, and that he would have to
pay the debts secured by it, he was not willing to pay $12,000
for the property, and therefore attended the sale on the 29th

of April, 1873, and withdrew the bid of $12,000 made for him at the first offering; that he then knew nothing about the mortgage, and thought he would get a credit for the $12,000 on his judgment; that he had made no arrangement with Brinckman for running the distillery in case the sale is con-firmed. He had been informed before the property was first offered that Hinken's mortgage had been fully satisfied, and that it would pass to the purchaser unencumbered, and he would get the amount bid credited on his judgment, and would not have to pay any money into court.

The foregoing is the substance of all the evidence on the trial of the exceptions, and there is none to the effect that the property was struck off to the appellant by the master at the bid of $12,000; but the sale was, without his interference or instrumentality, stopped, and another day fixed by the master for its consummation. Brinckman was authorized to bid for appellant, but there is no evidence that he was authorized by him to close the bidding and postpone the sale.

Public sales or sales by auction are governed by the same law that governs private contracts. The parties to such sales must assent or agree, and the agreement must be obligatory and mutual. At a sale by auction every bid by any one present is an offer by him. It becomes a contract as soon as the hammer falls or the bid is otherwise accepted; but until it is accepted it may be withdrawn by the bidder, because till then it is not obligatory on him, for want of the assent of the owner of the property by his agent, the auctioneer. (1 Parsons on Contracts, 479–80.)

In support of the text, Payne v. Cave, 3 T. R. 148; or Durnford & East, pp. 148–9, bottom page, same parties. That was a sale at auction of a worm-tub and a pewter worm. The defendant Cave bid £40 for it. The auctioneer during the biddings said he was informed that the worm weighed at least one thousand three hundred cwt. and was worth more than

£40. Cave asked him if he would warrant it to weigh so much. He was answered in the negative, and Cave then declared he would not take it, and refused to pay for it. It was sold on a subsequent day for £30 to Cave, and he was then sued for the difference; and Lord Kenyon being of opinion, on this statement of the case, that the defendant was at liberty to withdraw his bidding at any time before the hammer was knocked down, non-suited the plaintiff, and that judgment was approved by the Court of King's Bench. In the opinion it is said: "The auctioneer is the agent of the vendor, and the assent of both parties is necessary to make the contract binding. That is signified on the part of the seller by knocking down the hammer, which was not done here till the defendant had retracted."

An auction is not inaptly called *locus pœnitentiœ*. Every bidding is nothing more than an offer on one side, which is not binding on either side till it is assented to. But, according to what is now contended for, one party would be bound by the offer and the other not, which never can be allowed.

This court, in the case of Downing v. Brown and Barker (Hardin, 181), fully recognized the right of a bidder at a sale made by a sheriff under execution to retract his bid before the property was struck off to him.

A bidding at an auction may be retracted before the hammer is down. Every bidding is nothing more than an offer on one side which is not binding on either side until it is assented to, and that assent is signified on the part of the seller by knocking down the hammer. (2 Kent's Com. 538.)

In this case the assent of the seller was not given. Appellant never was accepted as a preferred bidder even; but after the bid was made for him by Brinckman the master commissioner, without the knowledge of appellant, stopped the bidding and delayed the sale for more than a week. When the master failed to accept appellant's bid on the day it was

made, and before he withdrew it, he was not bound by it. There was no obligation on the auctioneer or those he represented to surrender the property to appellant; and unless the obligation was mutual, neither would be bound by it.

The judgment requiring Grotenkemper to execute his bonds for the property at the price of $12,000 was erroneous, and must be reversed, and the cause remanded with directions to overrule appellees' exceptions and to dismiss their motion.

As to the cross-appeal of Deckebock, we are satisfied that the articles furnished by him and the labor bestowed in putting them up are not embraced by the lien law of the 17th of February, 1858 (Myers's Supp. 300), or any amendments thereto. Wherefore the judgment on the cross-appeal is affirmed.