MORTIMER H. HARTWELL *et al. vs.* JOSEPH B. GURNEY.

It is a fraudulent act for a trustee at an auction sale held by him to employ a puffer or by-bidder to enhance the price, even if the trustee's intention was thus to secure the best price for his *cestuis*.

Hence, when an assignee at his auction sale employed a puffer or bidder to run up the price, and the property was struck off to the puffer:

*Held,* that the creditors were entitled to hold the assignee as the purchaser at the sale, and to compel him to account for the amount of his puffer's bid.

BILL IN EQUITY brought by the complainants for themselves and other creditors of the respondent's assignor for an account, for the removal of the respondent as assignee, and to charge him with the amount bid at an auction sale held by him as assignee. Heard on bill, answer, and proof.

*January* 21, 1888.  DURFEE, C. J.  The question here presented arises upon the following facts disclosed by the pleadings and evidence, to wit : On August 27, 1884, Smith Shaw made a general assignment to the defendant for the benefit of his creditors.  A part of the assigned property consisted of a summer hotel or shore resort, with the buildings connected therewith and the furniture therein, situated on leased land in East Providence, and was subject to a mortgage for $1,500 with accrued interest, which the defendant satisfied to prevent foreclosure. This property was advertised for sale at auction.  At the auction sale it was struck off for $3,500 to David Goff, he being the highest bidder.  Goff, however, was employed by the defendant to bid for the purpose of enhancing the price and preventing a sacrifice, and his bid was made accordingly.  The next highest bid was $3,475.  The testimony shows to our satisfaction that this bid was *bonâ fide*, that the bidder was responsible, and that he would have taken the property and paid for it if he had not been overbid by Goff.  After the auction was over, the property was offered to him for the price bid and refused.  The defendant was himself the largest creditor, and we are satisfied that he acted for what he supposed to be the interest of the creditors when he employed Goff, having been informed by Smith Shaw that the next highest bidder had not long before offered him $4,500 for the property, and he, Smith Shaw, considered it worth $5,000.  The defendant

had no authority to act for the creditors except his authority as assignee. The creditors' who bring this suit ask that the defendant may be decreed to account, and that he be charged in account either with the $3,475 which he might have received but for Goff's bid, or the $3,500 bid by Goff, and that the property so sold to Goff may be the defendant's property by virtue of the sale. The question is whether they are entitled to the relief asked for.

The defendant contends that Goff, in making the bid, acted not for him individually, but for him in his capacity of assignee and for the benefit of the creditors, and that he cannot therefore be charged as purchaser. This raises the question whether as assignee he had any right to employ a puffer or by-bidder to protect the property for the creditors. Formerly in England there was a conflict between the law and the equity courts, the law courts holding that by-bidding or puffing was a fraud, and that any highest bidder who had been deceived by it could avoid his contract, or refuse to carry it out ; whereas the equity courts were disposed to countenance it so long as it was employed defensively to prevent a sacrifice. The doctrines at common law and in equity have recently, A. D. 1867, been assimilated in England, at least so far as regards auction sales of real estate, by statute making the rule at common law likewise the rule in equity. 2 Addison on Contracts, *868 ; Bateman on Auctions, *131–*136. In this country there are cases which, following the old English chancery rule, hold that the vendor may employ a by-bidder if he does it *bonâ fide* to prevent a sacrifice of the property under a given price. Benjamin on Sales, § 474, n. r. But, in our opinion, the rule, which is the more authoritatively established, is, that by-bidding is illegal, and that the vendor cannot hold the purchaser where the price has been run up by means thereof. Benjamin on Sales, § 470, n. k; Bateman on Auctions, *131, n. 1 ; *Veazie* v. *Williams*, 8 How. U. S. 134; *Moncrieff* v. *Goldsborough*, 4 Har. & McH. Md. 283; *Towle* v. *Leavitt*, 23 N. H. 360 ; *Baham* v. *Bach*, 13 La. 287 ; *Smith* v. *Greenlee*, 2 Dev. 126; *Morehead* v. *Hunt*, 1 Dev. Eq. 35 ; *Trust* v. *Delaplaine*, 3 E. D. Smith, 219 ; *National Bank of Metropolis* v. *Sprague*, 20 N. J. Eq. 159; *Pennock's Appeal*, 14 Pa. St. 446, 449 ; *Staines*

v. *Shore*, 16 Pa. St. 200; *Peck* v. *List*, 23 W. Va. 338; 48 Amer. Rep. 398. The last named case very ably reviews the decisions with copious quotations from them. It seems to us that the stricter rule is the just and honest rule, and that it ought to prevail; for an offer to sell at auction is an offer to sell to the highest bidder, and every bid is an inchoate acceptance, entitling the bidder to the property offered, if it turns out to be the highest, and there is no retraction on either side before the hammer falls; and therefore it is a breach of faith, a falsehood, a fraud, for the vendor to have a person employed to make a feigned bid for the purpose of beguiling the real bidder into virtually over-bidding himself. By-bidding, in other words, is a violation of the terms on which the people assembled at the sale are invited to compete with one another for the property exposed.

The language used by Lord Mansfield in the leading case of *Bexwell* v. *Christie*, 1 Cowp. 395, is specially apt : " The basis of all dealings ought to be in good faith," said he, " so more especially in these transactions where the public are brought together upon the confidence that the articles set up to sale will be disposed of to the highest real bidder, which could never be the case if the owner might secretly and privately enhance the price by a person employed for that purpose." In *Howard* v. *Castle*, 6 Term Rep. 642, Lord Kenyon, approving Lord Mansfield's decision in *Bexwell* v. *Christie*, pronounced his reasoning to be " founded on the noblest principles of morality and justice ; principles which are calculated to preserve honesty between man and man." And in *Pennock's Appeal*, 14 Pa. St. 446, 449, Gibson, C. J., well says : " Common honesty requires that all should be fair and aboveboard. To screw up the price, as it has been aptly termed, by secret machinery, can be no less than a fraud, and a sham bidder can be used for no other purpose." If it be said that without by-bidding the property offered may be sacrificed, the answer is that it is not necessary to offer it without reserve, and the risk of sacrifice may be avoided by publicly reserving the right to bid or to make one or more bids, in the conditions of sale, or by starting the sale at an upset price. In this or some similar way good faith may be kept with the bidders, and at the same time the property be protected.

The conclusion is unavoidable that the defendant had no authority, simply because he was an assignee, to employ a by-bidder, since he could have no right to deceive or defraud in whatever capacity he acted. It follows, as it seems to us, that he cannot be permitted to shelter himself from liability under the claim that Goff's bid was made not for himself individually, but for himself as assignee, and consequently that the creditors are entitled to disavow the bid as a bid in their behalf, and to hold him personally to it. That he supposed he was acting for their benefit may afford him a strong ground of appeal to them for forbearance, but we do not see how the court can regard it as a valid defence, without virtually countenancing the illegal practice which the supposition induced. On the contrary we think the court must hold that he assumed the risk of the bid when he made it, and that he must, abide by it if the creditors so demand. The bid necessarily involved a double risk either for himself or for the creditors, namely, the risk which actually befell, that the real bidder would not rise upon his bid, or, if he did rise, the risk that he would subsequently discover the deception and avoid the contract. In either event the property would be thrown back either to be kept by the defendant at the price bid by him, or to be again offered for sale; and it is a matter of common experience amounting to common knowledge that if a first auction miscarries, and especially if it miscarries for any such cause, a second auction is thereby discredited and frequently results in heavy sacrifice. In the case at bar a very considerable loss has already resulted in consequence of keeping the property. This loss should not fall on the creditors. It was the defendant's duty to sell, not keep it for them. Indeed, his offer to the *bonâ fide* bidder after the auction shows that his purpose in bidding was not to keep it for them, but to puff the price. Let him be decreed to have the property, and to account for it at the price bid by him.

*Simon S. Lapham*, for complainants.

*Edward C. Dubois*, for respondent.