C. G. ANDERSON and Others v. WISCONSIN CENTRAL RAILWAY COMPANY.[1]

March 5, 1909.

Nos. 15,987—(197).

**Announcement of Auction not an Offer to Sell.**

An announcement or advertisement that certain property will be sold at auction to the highest bidder is a mere declaration of intention to hold an auction at which bids will be received. It is not an offer to sell, which becomes binding, even conditionally, on the owner when a bid is made.

**Bid at Auction Is An Offer.**

An auctioneer asks for bids for the property, and a bid is an offer to purchase at the price named. Until the offer is accepted, no contract relations exist.

**Before Acceptance Bid May Be Withdrawn.**

At any time before the bid is accepted, the bidder may withdraw his offer to purchase or the owner his offer to sell.

Action in the district court for St. Louis county to recover $2,000 for refusal of defendant's auctioneer to accept plaintiffs' bid for a building, that being the highest bid made. The case was tried before

[1] Reported in 120 N. W. 39.

Ensign, J., and a jury which rendered a verdict in favor of plaintiffs for $1,500. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Reversed with directions to enter judgment for the defendant.

*Crassweller & Crassweller,* for appellant.

An advertisement of a sale by auction is a mere declaration of intention and does not bind the seller to sell at all, or to sell to any particular bidder, or to accept the highest bid. A bid is a mere offer which binds nobody until accepted by the seller, and the bidder may retract his bid, or the owner withdraw his property at any time before the hammer falls. Clark, Cont. 41–43; 9 Cyc. 280; Addison, Cont. 12; Bateman, Auctions, 30–126; Payne v. Cave, 3 T. R. 148; Blossom v. Railroad Co., 3 Wall. 196; Grotenkemper v. Achtermeyer, 74 Ky. 222; 4 Cyc. 1044.

An auctioneer may use a reasonable discretion in refusing a bid which he believes to be detrimental to the interests of his employer or likely to depress the bidding. Taylor v. Harnett, 55 N. Y. Supp. 988; Holder v. Jackson, 11 U. C. C. P. 543, 546.

*Jaques & Hudson,* for respondents.

ELLIOTT, J.

The Wisconsin Central Railway Company, having acquired certain real property in the city of Duluth through condemnation proceedings, advertised that at a time and place stated the buildings thereon would be sold at public auction. Bids for a certain house had been made until the amount offered amounted to $675. Anderson then increased his bid five dollars, making his offer $680. The auctioneer refused to consider this bid, because, as he stated, the amount of the raise was too insignificant. After waiting for a time to give Anderson an opportunity to increase it, the auctioneer announced that the house was sold to the last previous bidder for $675. An entry of this sale was made by the auctioneer in his entry book, as required by section 2815, R. L. 1905. Anderson demanded to know why the auctioneer had not accepted his bid, and on the same day he tendered the $680, and it was refused. Before this tender was made a bill of sale of the building had been executed and delivered to the party to whom the building had been knocked down. Anderson then brought this action

for damages, and recovered a verdict for $1,500. The defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial.

The conflicting contentions of the parties arise out of fundamentally different conceptions of the nature of an auction. The appellant contends that the advertisement of a sale at auction is a mere declaration of intention which does not bind the owner to sell, or to sell to any particular bidder, and that the contract is not made until the bid is accepted. The complaint charges the defendant with liability for damages resulting to the plaintiffs from its unlawful refusal to sell the building to them and to carry out the terms and conditions of the auction sale. It proceeds upon the theory that, notwithstanding the bid, no sale was in fact made to them, because the defendant refused to recognize their right to purchase. The claim, as stated in the brief, is that "the advertisement constitutes a complete memorandum of a contract, not of sale, but to sell, to the person who should comply with its condition. It follows that as soon as any person complied with the condition, i. e., became the highest bidder at the auction provided for in the writing, this proposal became a binding written contract to sell to that person the building at his bid."

While the action was thus brought for the breach of an agreement to sell to the highest bidder, the argument proceeds upon the theory that under such conditions a contract has its inception in the announcement or advertisement of the owner's intention to sell the designated property at public auction to the highest bidder; that, unless the contrary is expressly stated in the announcement, the sale is to be without reserve; that the bid of the highest bidder is the acceptance of the offer; that the fall of the hammer is an announcement by the agent of the owner that he will wait no longer for a higher bid; and that the one whose bid was highest when the hammer fell is the purchaser without reference to the action of the auctioneer in announcing that some other bidder is the purchaser. Reduced to its lowest terms, this means that the offer to sell is made in the advertisement of intention to sell at auction, and that the contract is completed by the acceptance of that offer by the bidder. There is some ground for this theory, but the decided weight of authority sustains the view that the announcement is a mere statement of intention to hold an auction, and that no

contract of any character is made until the offer to purchase is accepted by the auctioneer.

The jury, under proper instructions, found that the property was offered without express reservations as to the amount of the bids, that the bid of five dollars was made in good faith, and that under the circumstances the amount was not so small as to justify the auctioneer in declining to consider it on that ground. No exceptions were taken to the instructions which submitted these questions to the jury, and on this appeal we accept the conclusions of the jury as final. The issue is also simplified by the fact that the case involves no question of puffing or by-bidding by the owner, or of fraud or misrepresentation in the announcement of the sale. For the purpose of the argument, we assume the correctness of the respondent's claim that an advertisement or announcement of an auction sale which does not state limitations and conditions is equivalent to the announcement that the sale will be without reserve. The issue of law is thus clearly defined.

The custom of selling goods at auction is as old as the law of sale. In Rome, military spoils were disposed of at the foot of the spear—sub hastio—by auction, or increase. In later times we find a mode of auction called a "sale by the candle," or by the "inch of candle," which consisted of offering the property for sale for such a length of time as would suffice for the burning of an inch of candle. In Holland they inverted the usual process, and put the property up at a price usually greater than its value, and then gradually lowered the price until some one closed the sale by accepting the offer and thus becoming the purchaser. In ancient Babylon the young women were sold at a public auction according to a method which combined the features of the Dutch and ordinary kinds of auctions. The group of prospective wives would ordinarily contain some who, by reason of personal beauty, were thought more desirable than others. The attractive ones were first sold to the highest bidders. When the supply of this quality was exhausted, those less favored by nature were offered and sold to the bidders who would take them with the least dowry, which was payable out of the money received from the sale of the beauties. Herodotus considered this custom very commendable.

In view of the general prevalence of the custom of selling by auction, it is remarkable that no very early cases are found in the English

reports. The parent case of Payne v. Cave, 3 T. R. 148, was decided by Lord Kenyon, C. J., sitting at Guildhall in 1788. The plaintiff offered a distilling apparatus for sale, including a pewter worm, at public auction, on the usual conditions that the highest bidder should be the purchaser. There were several bidders for the worm, of whom Cave, who bid £40, was the last. The auctioneer dwelt on this bid for some time, until Cave said: "Why do you dwell? You will not get more." The auctioneer stated that he was informed that the worm weighed at least 1,300 cwt., and was worth more than £40. The bidder then asked him if he would warrant it to weigh so much, and, receiving an answer in the negative, he declared that he would not take it. The worm was then resold on a subsequent day for £30, and an action was brought against Cave for the difference. Lord Kenyon ruled that the bidder was at liberty to withdraw his bid at any time before the hammer fell, and nonsuited the plaintiff. On motion to set aside the nonsuit, it was contended that a bidder is bound by the conditions of the sale to abide by his bid, and could not retract; that the hammer is suspended, not for the benefit of the bidder, or to give him an opportunity for repenting, but for the benefit of the seller; and that in the meantime the person who bid last is a purchaser, conditional upon no one bidding higher. But the court thought otherwise, and held that the auctioneer was the agent of the vendor, and that the assent of both parties was necessary to make the contract binding, and "that is signified on the part of the seller by knocking down the hammer, which was not done here till the plaintiff had retracted." "An auction," said the court, "is not inaptly called a locus pœnitentiæ. Every bidding is nothing more than an offer on one side, which is not binding on either side until assented to."

The idea that an action will lie for the breach of an implied undertaking to sell to the highest bidder was advanced in Warlow v. Harrison (1859) 1 El. & El. 309, and dicta supporting it will be found in Harris v. Nickerson (1873) L. R. 8 Q. B. 286, 288, Spencer v. Harding (1870) L. R. 5 C. P. 561, 563, Re Agra Bank (1867) L. R. 2 Ch. App. 391, 397, and Johnson v. Boyes [1899] 2 Ch. Div. 73. These cases assume that an offer to sell property at auction is indistinguishable from the case of an offer to the general public, such as a reward for the return of lost property, where it is held that contract rights are

created in favor of one who complies with the conditions of the offer. Carlill v. Carbolic [1893] 1 Q. B. 256; Anson, Contracts, p. 52. Langdell seems to be the only text-writer who takes this view of what the law should be. In his Summary of the Law of Contracts (page 24) it is stated that the correct view is "that the seller makes the offer when the article is put up, namely, to sell it to the highest bidder, and that, when a bid is made, there is an actual sale, subject to the condition that no one else shall bid higher." See note to Tillman v. Dunman in 57 L. R. A. 784, 789.

Warlow v. Harrison, supra, the source of all the uncertainty, was an action against an auctioneer who had advertised that he would sell certain horses, "the property of a gentleman, without reserve," at auction. Warlow bid sixty guineas for one of the horses, whereupon the owner bid sixty one guineas. Warlow refused to increase his bid, and the horse was announced as sold for sixty one guineas to the owner. Warlow, claiming to be the highest good-faith bidder, tendered the amount of his bid to the auctioneer and demanded the horse, and, on this being refused, brought an action against the auctioneer, alleging that the defendant was his agent to complete the contract, that he had refused to do so, and that he had thereby lost certain money in attending the auction and had been deprived of the benefit of his contract. The defendant pleaded (1) not guilty; (2) that the plaintiff was not the highest bidder; and (3) that the auctioneer did not become the bidder's agent to complete the sale. The plaintiff recovered a verdict, but the Common Pleas (Lord Campbell, C. J., Wightman, J., and Erle, J.) ordered a nonsuit on the ground that the plaintiff's allegation as to the agency of the defendant and the duty of the defendant to complete the contract on behalf of the plaintiff was not sustained. It was urged in argument that an auctioneer is the agent of the bidder to receive the bid; that the bidder is a conditional purchaser; that, when the sale by the conditions is without reserve, the bidder is absolutely the purchaser, unless there be a bona fide higher bidding; and that the auctioneer, in consideration of the bidding by which a commission will come to him, promises the highest bidder to knock down the article to him and to do all that is necessary to complete the sale. "But this reasoning," said Lord Campbell, "is wholly at variance with the case of Payne v. Cave, 3 T. R.

148, which has been considered good law for nearly seventy years. That case decided that a bidding at an auction, instead of being a conditional purchase, is a mere offer, that the auctioneer is the agent of the vendor, that the assent of both parties is necessary to the contract, that this assent is signified by knocking down the hammer, and that till then either party may retract. This is quite inconsistent with the notion of a conditional purchase by a bidding, and with the notion of there being any personal promise by the auctioneer to the bidder that the bidding of an intending purchaser shall absolutely be accepted by the vendor. The vendor himself and the bidder being respectively free till the hammer is knocked down, the auctioneer cannot possibly be previously bound."

Holding, thus, that no action would lie against the auctioneer, the court found it unnecessary to consider whether there was any remedy against a vendor who had violated a condition that the property would be sold to the highest bona fide bidder without reserve. In the Exchequer Chamber the decision was affirmed; but, as the plaintiff might amend his declaration, the court discussed the merits of the case which might be made. Barons Martin, Byles, and Watson were of the opinion that the plaintiff was entitled to recover from the auctioneer, because the auction was announced to be "without reserve," which meant that neither the owner nor any one in his behalf should bid at the auction, and that the property would be sold to the highest bidder, whether the sum bid was equivalent to the real value or not. On the principle which creates a contract between the loser of property who offers a reward for its return and the finder, or a railway company which advertises a time-table and one who purchases a ticket, it was said that an auctioneer who put the property up for sale upon such conditions pledges himself that the sale shall be without reserve, and that a contract is made with the highest bidder, who, in case of a breach thereof, has a right of action against the auctioneer. "We think," said Baron Martin, "that the auctioneer has contracted that the sale shall be without reserve; and that the contract is broken upon a bid being made by or on behalf of the owner, whether it be during the time when the property is under the hammer, or it be the last bid upon which the article is knocked down; in either case the sale is not 'without reserve' and the contract of the auctioneer is broken. We enter-

tain no doubt that the owner may, at any time before the contract is legally complete, interfere and revoke the auctioneer's authority; but he does so at his peril, and, if the auctioneer has contracted any liability in consequence of his employment and the subsequent revocation or conduct of the owner, he is entitled to be indemnified." Baron Bramwell and Willes, J., preferred to rest the judgment upon the ground that the auctioneer had undertaken to have, and yet there was evidence that he had not, authority to sell without reserve.

Mainprice v. Westley (1865) 6 Best & S. 420, was also an action against the auctioneer. The declaration averred that in handbills and circulars it "was stated and represented by [the defendant] that he, the defendant, would offer the said messuage and shop for peremptory sale at public auction" at a day and place named; that the plaintiff, confiding in the statements, attended at the time and place; that the messuage and shop were offered according to the representation; that the plaintiff then bid a price which was the highest bid, except a sum which, to the knowledge of the defendant, was bid by an agent of the vendor contrary to the representation that the sale would be peremptory; and that the defendant refused the plaintiff's offer. It was said that if it had been alleged that any part of the representation had been false to the knowledge of the defendant, and that the plaintiff, by reason of the deceit, had been induced to incur expense by going to the place of auction, the count would have been good. But intentional deceit was not alleged, the plaintiff relying on the claim that there was a contract on the part of the auctioneer that if the plaintiff was the highest bidder the premises would be knocked down to him. It was held that no contract had been proven, because the handbills disclosed that the auctioneer was merely the agent of a principal, the name of whose solicitor was given. If any express contract was made, it was with this solicitor. The court declined to determine whether there was any liability on his part, and merely held that no case had been proven against the auctioneer. Cockburn, C. J., Shee, J., and Blackburn, J., dubitante, were of the opinion that when an auctioneer, without disclosing his principal, advertises a sale without reserve, he personally contracts that there shall be a sale without reserve. But the point was not decided.

As to Warlow v. Harrison, Blackburn, J., said: "Three learned judges gave their opinion that where an auctioneer advertised a sale without reserve, not disclosing in any way who his principal was, he personally contracted that there should be a sale without reserve. Two other learned judges did not agree in this view, and it appears ultimately that the court of Exchequer Chamber pronounced no other judgment than that the pleadings should be amended to enable the parties to raise the question unless they consented to a stet processus, which they did. We do not think, therefore, that we are precluded by this, as a judgment of a court of error; and, if necessary, we should be at liberty to consider the question whether, even in a case where the name of a principal is not disclosed by an auctioneer, there is a contract by the latter such as is now insisted on.".

, In Harris v. Nickerson (1873) L. R. 8 Q. B. 286, the nature of the advertisement was considered, and it was held that it should be construed as a mere declaration of intention, which did not amount to a contract with any one who might act upon it, or constitute a warranty that the articles advertised would be offered for sale. Certain articles were not offered, and a party who attended for the purpose of bidding brought an action to recover for his loss of time and expense. Blackburn, J., said: "This is certainly a startling proposition, and would be excessively inconvenient if carried out. It amounts to saying that any one who advertises a sale by publishing an advertisement becomes responsible to everybody who attends the sale for his cab hire and traveling expenses." Referring to Warlow v. Harrison, the learned judge remarked that "the opinion of the majority of the judges in the Exchequer Chamber appears to have been that an action would lie for not knocking down the [property] to the highest bona fide bidder when the sale was advertised as without reserve; in such a case it may be that there is a contract to sell to the highest bidder, and that if the owner bids there is a breach of the contract." Quinn, J., was also of the opinion that the particular action could not be maintained without going to the extent of saying that where an auctioneer issues an advertisement of the sale of goods, if he withdraws any part of them without notice, the persons attending may all maintain actions against him. He was of the opinion, however, that when a sale is advertised without reserve, and a lot is put up and bid for, there is

ground for saying, as was said in Warlow v. Harrison, that a contract is entered into between the auctioneer and the highest bona fide bidder. But that rule was not applicable to the case under consideration, as the property was never put up for sale, and it was impossible to say that there was a contract with every one attending the sale. The real point in the case was brought out by Justice Archibald, who said: "This is an attempt on the part of the plaintiff to make a mere declaration of intention a binding contract. He has utterly failed to shew authority or reason for the proposition. If a false and fraudulent representation had been made, it would have been quite another matter. But to say that a mere advertisement that certain articles will be sold by auction amounts to a contract to indemnify all who attend, if the sale of any part of the articles does not take place, is a proposition without authority or ground for supporting it."

In re Agra Bank (1867) L. R. 2 Ch. App. 391, held that the holder of a letter of credit is the agent of the writer for the purpose of entering into a contract. Lord Cairns referred to Warlow v. Harrison and Denton v. Great Northern, 5 El. & Bl. 860, as analogous cases. In Spencer v. Harding, L. R. 5 C. P. 561, it appeared that the defendant had sent out circulars inviting offers for a stock of goods. Mr. Justice Willes said that, "if the circular had gone on, 'and we undertake to sell to the highest bidder,' the reward cases would have applied, and there would have been a good contract in respect of the persons. But the question is, whether there is here any offer to enter into a contract at all, or whether the circular amounts to anything more than a mere proclamation that the defendants are ready to chaffer for the sale of the goods, and to receive offers for the purchase of them." It was held that the circular contained no words intimating that the highest bid would be accepted.

In Johnston v. Boyes [1899] 2 Ch. 73, it appeared that Boyes had advertised the freehold of a public house for sale at auction under conditions providing that the highest bidder should be the purchaser. The plaintiff, a married woman of financial standing, sent her husband to bid for her, but did not supply him with the necessary funds. The property was knocked down to him; but the auctioneer, who knew that he was financially irresponsible, refused to accept his check for the amount of the required deposit and sold the property to

107 M.—20

another person. The husband assured the auctioneer that his wife would furnish the money to make the check good, and the court found that his statement was true. The plaintiff sued the vendors for breach of the contract that the highest bidder should be the purchaser. It was held that the bidder had not complied with the conditions of sale, which required that the deposit should be in cash. This disposed of the case; but the court stated that the action could have been maintained, had the deposit been tendered in cash and the highest bidder been refused the property. "A vendor," said Cozens-Hardy, J., "who offers property for sale by action on the terms of the printed conditions can be made liable to a member of the public who accepts the offer if those conditions be violated"—citing Warlow v. Harrison, 1 El. & El. 295, and Carlill v. Carbolic [1893] 1 Q. B. 256.

But the doctrine of Warlow v. Harrison was never generally acquiesced in, and in Lord Halsbury's Laws of England, vol. 1, p. 511 (n), doubt is expressed as to its correctness. In a recent English edition of Benjamin, Sales (1906) page 487, the learned editors say that "two points were involved in Warlow v. Harrison, viz.: (1) Is an announcement that a sale will be without reserve, or will be made to the highest bidder, an offer of a contract with the highest bona fide bidder, and accepted by his bid? (2) When an auctioneer, acting for an undisclosed principal, makes such an announcement, does he thereby offer to contract personally? Although technically Warlow v. Harrison may not have been an actual decision upon these points, yet there was the strongest intimation of opinion in the affirmative on both points on the part of three judges, from which the other two did not dissent, and the case has been subsequently treated as actually deciding them. On the second point, however, the personal liability of the auctioneer acting for an undisclosed principal, the case was doubted by Cockburn, C. J., and Shee, J., in Mainprice v. Westley, because the employment of an auctioneer necessarily involves the character of agent only, and therefore, prima facie, he does not contract personally. * * * As pointed out by a learned writer [Pollock on Contracts, pp. 17, 19], Warlow v. Harrison involves the theory that bidding at an auction, advertised to be without reserve is not, as in other cases, a mere offer, but a conditional acceptance; the condition being that no higher bidder presents himself. But this theory cannot hold

good under s. 58 (2) of the code, as the sale is not complete until the fall of the hammer, so that until then neither party is bound. Yet, when once the goods are put up, there may, perhaps, be an implied contract not to withdraw them"—citing Johnston v. Boyes, supra.

In commenting on Warlow v. Harrison, Sir Frederick Pollock says that "the opinions expressed by the judges, therefore, are not equivalent to the actual judgment of a court of error, and have been in fact regarded with some doubt in a later case where the court of Queen's Bench decided that at all events an auctioneer whose principal is disclosed by the conditions of sale does not contract personally that the sale shall be without reserve." Pollock, Cont. (Williston's Ed.) p. 18, citing Mainprice v. Westley, supra. It is now settled that the fact of disclosure or nondisclosure of the principal is immaterial. Woolfe v. Horne (1877) L. R. 2 Q. B. D. 355; Rainbow v. Howkins [1904] 2 K. B. 322.

Sale of Goods Act 1893 (St. 56 & 57 Vict. c. 71) § 58 (2), provides that " * * * (2) a sale by auction is complete when the auctioneer announces its completion by the fall of the hammer, or in other customary manner. Until such announcement is made any bidder may retract his bid." It was held in the Scotch case of Fenwick v. MacDonald, [1904] 6 F. (Ct. of Sess.) 850, that, whatever may have been the law formerly, this statute entitles a bidder to withdraw his bid at any time before the fall of the hammer, and the vendor must be equally free to withdraw his offer to sell, because one party cannot be bound while the other is free. But in the recent case of McManus v. Fortescue, [1907] 2 K. B. 1, some support was again given to Warlow v. Harrison. It appeared that the property was actually knocked down to the highest bidder at a price below the reserve, and it was held that the bidder had no right of action against the auctioneer, either for breach of duty, or for refusing to sign a memorandum or otherwise complete the contract, or for breach of warranty of authority to accept the bid. Lord Justice Cozens-Hardy, in agreeing with this disposition of the case, said: "I am of the same opinion, and I only desire to add one remark. This action was really launched on the lines of Warlow v. Harrison, but in my opinion the attempt to set up an analogy between the two cases fails. The Exchequer Chamber had there to consider a case in which the sale was

advertised to be without reserve, and the auctioneer was sued by a man who claimed to be the highest bidder; the only bid overtopping his being that of the vendor. The court said that the defendant, the auctioneer, might be liable on the ground that he had contracted that the sale was to be without reserve and had broken that contract. Here the contract between the parties is subject to the reserve, and that contract has not been broken, and consequently the plaintiff has no cause of action."

The Canadian cases of McAlpine v. Young, 2 Ch. Chamb. (Ont.) 85, and O'Connor v. Woodward, 6 Pr. (Ont.) 223, seem to approve the doctrine of Warlow v. Harrison; but Holder v. Jackson, 11 U. C. C. P. 543, is to the contrary. The plaintiff there rested his claim on the theory that an auctioneer at a public auction must receive the bid of any person present and does a wrong to any person whose bid he refuses to receive. After conceding, on the authority of Warlow v. Harrison, that, when the sale is advertised to be without reserve, the auctioneer cannot receive a higher bid on the behalf of the owner to the prejudice of the preceding bidder, the court said: "But in such a sale as is stated in this count, I do not understand on what ground any person can claim as a right to be allowed to bid—to offer to become a purchaser. It will be going beyond any authority I have seen to hold that by holding an auction under such circumstances there is an implied duty or contract to deal with any person who presents himself and that the auctioneer, with due regard to his responsibilities to his principal has not a right to refuse to deal with any particular person. The principal might refuse from mere caprice to sell to A., B., or C., and might direct the auctioneer to refuse to sell to certain parties; and I can see no reason why the auctioneer (the agent) is bound by law to accept offers or bids, any more than his principal would be." See Cull v. Wakefield, 6 U. C. Q. B. (O. S.) 178.

In the United States a distinction has sometimes been made between ordinary private and judicial and official sales, but the only difference seems to be that the latter may require the approval of the court. Clifford, J., in Blossom v. Railroad Co., 3 Wall. 196, 18 L. Ed. 43.

In Corryolles v. Mossy, 2 La. 504, the court approved the rule stated by Chancellor Kent (2 Comm. 537) that a bid is no more than an

offer on one side which is not binding until accepted by the auctioneer; but the decision was rested on the construction of a provision of the Louisiana Code.

In Newman v. Vonderheide, 11 Wkly. L. Bul. (Ohio) 123, it was said that, "when property offered at public auction is withdrawn before the acceptance of a bid, there is no contract of sale, and the highest bidder cannot compel a conveyance by an action for specific performance, or obtain damages for refusal to convey."

Miller v. Baynard, 2 Houst. 559, 83 Am. Dec. 168, and Hartwell v. Gurney, 16 R. I. 78, 13 Atl. 113, both cases of puffing, give some support to the doctrine of Warlow v. Harrison. In the latter it was held that the vendor cannot hold the bidder when the price has been run up by means of puffing. The statement of the court that "an offer to sell at auction is an offer to sell to the highest bidder, and every bid is an inchoate acceptance, entitling the bidder to the property offered, if it turns out to be the highest, and there is no retraction on either side before the hammer falls," must be read in connection with the facts of the case which was under consideration.

Taylor v. Harnett, 26 Misc. 362, 55 N. Y. Supp. 988, holds that an auctioneer has the right to refuse to accept a bid which is a trifling advance, where the sum offered is not commensurate with the actual known value of the property. In the course of the decision the court said: "Their claim is that, as a matter of law, where an auctioneer advertises a sale at public auction, and in response to this invitation bidders attend, an implied contract arises between them that the property will be knocked down to the highest bidder, for a breach of which an action will lie against him at the suit of such bidder. There is no case in this state which is directly in point with the proposition advanced. The question, however, seems to have been determined in England in the case of Warlow v. Harrison, 29 L. J. (N. S.) 18, in the Exchequer Chamber, on error from the Queen's Bench. There it was held, as the headnote expresses it, that if the auctioneer inserts in the conditions of a sale by auction that the property is to be sold 'without reserve,' he by so doing contracts with the highest bona fide bidder that the sale shall be without reserve; and the contract is broken if, during the auction, a bid is made by or on behalf of the owner of the property sold,

and in such case the auctioneer is liable to an action at the suit of the highest bona fide bidder."

It has been held that the highest bidder at a judicial sale is entitled, as a matter of law, to the property. State v. Johnston, 2 N. C. 293; McLeod v. McCall, 48 N. C. 87, 89; Gilbert v. Watts, 169 Ill. 129, 48 N. E. 430, 61 Am. St. 154; Morton v. Moore, 4 Ky. Law 717. But the decided weight of authority is otherwise. Knox v. Spratt, 19 Fla. 817, 833; Rogers v. Cleveland, 132 Mo. 442, 458, 34 S. W. 57, 31 L. R. A. 335, 53 Am. St. 494; Davis v. McCann, 143 Mo. 172, 178, 44 S. W. 795. See also Keightley v. Birch, 3 Camp. 521.

Blossom v. Railroad Co., supra, holds that the highest bidder at a judicial sale at public auction, whose bid has not been accepted, cannot require that the sale be confirmed to him. Mr. Justice Clifford said:

"Biddings at an auction, says Mr. Addison, are mere offers, which may be retracted at any time before the hammer is down and the offer has been accepted. [Addison on Contracts (Ed. 1857) 26.] Leading case upon that subject is that of Payne v. Cave, [3 T. R. 148,] where it was expressly held that every bidding at an auction is nothing more than an offer on one side until it has received the assent of the auctioneer as the agent of the owner. Supreme Court of Pennsylvania held, in the case of Fisher v. Leitzer [23 Pa. St. 308, 62 Am. Dec. 335] that a bidder at a sheriff's sale has a right to retract his bid before the property is struck down to him, and that the sheriff has no right to prescribe conditions which will deprive him of such a right. Express ruling was that a bid at an auction before the hammer falls is like an offer before acceptance, and that when the bid is withdrawn before it is accepted there is no contract, and that such a bidder cannot be regarded in any sense as a purchaser. Rule, as laid down in the last edition of Story on Sales, is substantially the same as that adopted in the preceding case. Speaking of ordinary sales at an auction, the author says that the seller may withdraw the goods or the bidder may retract his bid at any time before they are struck off, and the reason assigned for the rule is, that so long as the final consent of both parties is not signified by the blow of the hammer there is no mutual agreement to a definite proposition. 1 Sugden, Vendors & Purchasers, 25. But as soon as the hammer is struck down, says the same author,

the bargain is considered concluded, and the seller has no right afterwards to accept a higher bid nor the buyer to withdraw from the contract. |Rutlidge v. Grant, 4 Bing. 653; Cook v. Oxley, 3 T. R. 654; Adams v. Lindsell, 1 Barn. & Ald. 681; Story, Sales, 461.] Same rules prevail upon a sale under common-law process as in other cases of sales at public auction, so far as respects the question now before the court. Until the property is actually struck off to the bidder he may withdraw his bid as a mere offer or proposition.

"Judicial sales made under the decretal orders of courts of chancery, are also, in this country, governed substantially by the same rules, except that such sales are usually made by the marshal, or master in chancery acting as an officer of the court, * * * and subject to the power of the court to set the sale aside for good cause shown, or open it at any time before it has been confirmed, if the circumstances of the case require the exercise of that power. * * * *

"Subject to those qualifications, and perhaps some others which need not be noticed, the question of sale or no sale, when it arises under a state of facts such as are exhibited in this record, may be fully tested by substantially the same rules as those which apply in cases of sales under common-law process, or in other cases of sales at public auction. Tested by those rules, it is clear to a demonstration that there was no sale of the mortgaged premises in this case, because the property was never struck off to the appellant, nor was his bid, by act or word, or in any manner, ever accepted by the seller, and the record shows that, at the hearing in the court below, nothing of the kind was pretended by the appellant. Instead of setting up that pretense, his complaint was that the marshal erred in refusing to accept his bid, which, if possible, is less defensible upon the facts and circumstances of the case than the theory of the sale and purchase."

In Boyd v. Greene, 162 Mass. 566, 39 N. E. 277, an auction sale of certain real estate had been advertised to take place without reserve. The plaintiff bid $1,725 for the property, and the auctioneer told him that if he would bid $1,750 the property would be knocked down to him. The bid was made; but the auctioneer, after consulting with the owner, then announced that the property would not be sold for $1,750. After referring to Warlow v. Harrison and the other English cases in which it had been cited, the court said: "The case at bar is not an

action to recover for the trouble and expense of attending the auction under the inducement held out by the defendant in the advertisement. See Harris v. Nickerson, supra. It is an action to recover damages because the defendants, through their agent, the auctioneer, did not sell the property to the plaintiff, and did not do what was necessary to make a valid sale of the property to him, as they had agreed to do." The court held that, even if the conversation between the auctioneer and bidder did amount to a contract, it was unenforceable, because within the statute of frauds. White v. Dahlquist, 179 Mass. 425, 60 N. E. 791.

The recent case of McPherson v. Okanogan, 45 Wash. 285, 88 Pac. 199, 9 L. R. A. (N. S.) 748, is very like the one at bar. The county advertised property for sale at public auction to the highest and best bidder. The complaint alleged that the plaintiff was the highest and best bidder, and that the defendant refused to knock down the property to it and demanded that the defendant be required to convey the property to it. A demurrer to the complaint was sustained. On the appeal the appellant contended that, since its bid for the property when it was offered for sale was the highest and best bid, it was the duty of the auctioneer to strike off the property to it, and that the failure so to do could not affect its right to have the sale completed. After citing Blossom v. Railroad Co., 3 Wall. 196, 18 L. Ed. 43, and other cases, the court said: "Measured by the tests thought sufficient in these cases, the offer to sell the property and a bid therefor by the appellant did not create a contract of sale between the county and the appellant, nor his bid accepted, and, there being no contract of sale between the parties, there is no contract capable of being specifically enforced." It was also held that the officer making the sale was clothed with a certain discretion as to refusing a bid, when in his judgment it was not made in good faith or was made in such a sum as would amount to a virtual sacrifice of the property. To the same effect is Warehime v. Graf, 83 Md. 98, 34 Atl. 364, which held that the contract was not complete until the property was knocked down to the highest bidder.

In Ives v. Tregent, 29 Mich. 390, Mr. Justice Cooley said: "The assignees had put an auctioneer in charge of the sale, and must be understood to authorize him to speak for them. When he accepts a bid

and knocks down the property, a bargain is closed." Tillman v. Dunman, 114 Ga. 406, 40 S. E. 244, 57 L. R. A. 784, 88 Am. St. 28, holds that it is the right of an executor offering land at sale at public auction to withdraw the same at any time before the hammer falls, which, of course, could not be done if the contract was complete when the bid was made.

The earnestness with which the respondent contends that the trial court was right in holding that the contract was complete when the bid was made, conditional on there being no higher bid, has induced us to make a somewhat extended examination of the authorities. The result discloses the fact that there has been running through some of the English cases a recognized, but never applied, principle which would sustain the right of action in such a case as the present. But all the cases in which the doctrine is recognized were decided on other grounds. No substantial support for the doctrine is found in the American cases. It is, in fact, utterly irreconcilable with principles which are universally recognized.

Mutuality is an essential element of a contract. One party thereto cannot be bound, and the other remain free. If the announcement of an auction is an offer to sell to the highest good-faith bidder, and the contract is closed when the bid is made, both the vendor and the vendee must be bound thereby. But it is conceded by all the authorities that the bidder may withdraw his bid at any time before the hammer falls, and this means necessarily that the bid is a mere offer which is not binding until accepted. Grotenkemper v. Achtermeyer, 74 Ky. 222; Hibernia v. Behnke, 121 Cal. 339, 53 Pac. 812; Fisher v. Seltzer, 23 Pa. St. 308, 62 Am. Dec. 335; Dunham v. Hartman, 153 Mo. 625, 55 S. W. 233, 77 Am. St. 741; Payne v. Cave, 3 T. R. 148; Blossom v. Railroad Co., supra; 1 Halsbury, Laws of England, § 1039; 1 Dart, Vendor & Purchaser, 200; 1 Benjamin, Sales (5th Eng. Ed.) p. 66; Story, Sales (4th Ed.) § 461; Baker, Sales, § 550; Bateman, Auctions, § 30; 1 Warvelle, Vendors & Purchasers, § 247; note to Tillman v. Dunman, 57 L. R. A. 784; 4 Cyc. 1044; 3 Am. & Eng. Enc. (2d Ed.) p. 501; 1 Sugden, Vendors & Purchasers (14th Ed.) 21; Willams, Vendors & Purchasers, 19; Auctions & Auctioneers, 8 South. L. Rev. 555. English Sales of Goods Act 1893, § 58 (2), expressly provides that every bidding being but an offer on one side, which is bind-

ing on neither until assented to. Similar provisions are found in the statutes of California (Civ. Code, § 1794) and North Dakota (Rev. Codes 1905, § 5438).

On principle and authority the correct rule is that an announcement that a person will sell his property at public auction to the highest bidder is a mere declaration of intention to hold an auction at which bids will be received; that a bid is an offer which is accepted when the hammer falls, and until the acceptance of the bid is signified in some manner neither party assumes any legal obligation to the other. At any time before the highest bid is accepted, the bidder may withdraw his offer to purchase or the auctioneer his offer to sell. The owner's offer to sell is made at the time through the auctioneer, and not when he advertises the auction sale. A merchant advertises that on a certain day he will sell his goods at bargain prices; but no one imagines that the prospective purchaser, who visits the store and is denied the right to purchase, has an action for damages against the merchant. He merely offers to purchase, and if his offer is refused, he has no remedy, although he may have lost a bargain, and have incurred expense and lost time in visiting the store. The analogy between such a transaction and an auction is at least close. As the advertisement in this case was a mere statement of intention to offer the property for sale at public auction to the highest bidder, the respondent's bid did not complete either a contract of sale or a contract to make a sale.

The question of the application of the statute of frauds has been fully argued; but it disappears from the case when we reach the conclusion that no contract of any kind was entered into between the parties.

The order is therefore reversed, with directions to enter judgment for the defendant.