### Martin v. Mathis.

(Decided April 23, 1919.)

Appeal from Spencer Circuit Court.

1. Vendor and Purchaser—Auction Sale of Land—Frauds, Statute of —Memorandum—Signing—Sufficiency of Evidence.—In an action by the vendor of land, sold at public auction, to recover of the purchaser the difference between the auction price and the price obtained at a subsequent sale, evidence examined and held insufficient to show that the memorandum of sale in the auction book was signed by the auctioneer.

2. Frauds, Statute of—Vendor and Purchaser—Auction Sale of Land —Authority of Auctioneer—Sufficiency of Memorandum.—An auctioneer is the agent of both parties to the sale, and a memorandum thereof signed by him at the proper time, if otherwise complete, is sufficient to charge both the vendor and purchaser under the statute of frauds.

3. Frauds, Statute of—Vendor and Purchaser—Auction Sale of Land
—Authority of Auctioneer—Sufficiency of Memorandum.—Where
an auctioneer has full authority to advertise the property and to
make all the necessary arrangements for carrying the sale into
effect, his authority to bind the vendor does not end with the
sale but extends beyond it, and until it is revoked he may properly
bind the vendor by a memorandum signed within a reasonable
time, but he has no authority to bind the purchaser unless he
signs the memorandum contemporaneously with, or immediately
after, the sale.

4. Frauds, Statute of—Auction Sale of Land—Sufficiency of Memor-
andum.—An auctioneer's memorandum of the sale of land made
on the next day after the sale, though binding on the vendor, is
not binding on the purchaser unless he accepts the memorandum
or otherwise assents to the sale.

SAMUEL K. BAIRD for appellant.

J. W. CRUME and L. W. ROSS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COM-
MISSIONER—Reversing.

On October 2, 1916, H. C. Mathis offered for sale at
public auction, in Taylorsville, Ky., his farm, consisting
of 275 acres of land, located in Spencer county. Minor
Martin became the purchaser at the price of $8,482.50,
but declined to comply with the terms of the sale. The
property was again advertised and sold on November 6,
1916, when it brought only $6,635.69. Thereupon Mathis
brought this suit against Martin to recover the difference
in price, together with the cost and expense incident to
the second sale. A trial before a jury resulted in a ver-
dict and judgment for plaintiff in the sum of $1,936.62.
The defendant appeals.

Defendant insists that the memorandum of the auc-
tioneer was not sufficient to take the case out of the stat-
ute of frauds, and that the trial court erred in not direct-
ing a verdict in his favor.

On the day after the sale, the auctioneer, A. L. Col-
lier, signed and delivered to plaintiff the following mem-
orandum:

"Mem-: Taylorsville, Ky.

"Sold for Dr. H. C. Mathis one farm of 275 acres
Oct. 2, 1916, for $8,482.50 to Minor Martin.
                                    "A. L. COLLIER, Auctioneer.

"This certifies that the above is a correct copy of the memorandum of sale entered in my book as of date stated therein.

"This October 3, 1916.

"A. L. Collier."

It will be observed that this memorandum purports to contain a correct copy of a memorandum made by the auctioneer in his book, but the auctioneer repeatedly stated that he was unable to say that he had signed the memorandum in his book, and no other witness testified that he saw the auctioneer's signature to the memorandum in the book. That being true, there was no evidence that the memorandum in the auction book was signed by the auctioneer.

An auctioneer is the agent of both parties to the sale, and a memorandum thereof signed by him at the proper time, if otherwise complete, is sufficient to charge both the vendor and the purchaser under the statute of frauds. McBrayer v. Cohen, 92 Ky. 479, 18 S. W. 123; Gill v. Hewitt, 7 Bush, 10; Thomas v. Keer, 3 Bush, 619, 96 Am. Dec. 262. While it is sometimes stated that the auctioneer's authority ceases as soon as the sale has taken place, it is now generally held that his agency for the vendor is not necessarily coextensive with his agency for the purchaser. His agency for the purchaser ends with the sale, and unless the memorandum be made and signed contemporaneously with the sale, or immediately thereafter, it is not binding on the purchaser. On the other hand, his agency for the vendor may or may not end with the sale. If he be a mere crier, who simply calls for bids and strikes the bargain, his authority ends with the sale; but, if he be given authority to advertise the property and to make all the necessary arrangements for carrying the sale into effect, his authority to bind the vendor does not end with the sale but extends beyond it, and until it is revoked, he may properly bind the vendor by a memorandum signed within a reasonable time. In reaching this conclusion, the Supreme Judicial Court of Massachusetts, in the case of White v. Dahlquist Manufacturing Co., 179 Mass. 427, 60 N. E. 791, used the following language:

"It is still further objected that as to the Third street estate the memorandum was not signed until the next day, and that the auctioneer had no authority at that

time to bind the defendants. The general rule is that the memorandum may be signed at any time subsequent to the formation of the contract, at least before action brought. Browne, St. of Frauds, sec. 352a, and cases cited; Lerned v. Wannemacher, 9 Allen 412, 416; Sanborn v. Chamberlin, 101 Mass. 409, 416. And this rule is applicable where the contract is made by an agent and the subsequent memorandum is signed by him during the existence of his agency. It has been sometimes thought that there is an exception to this rule in the case of auctioneers (see the authorities referred to in Browne, St. of Frauds, sec. 353), but the exception is more apparent than real. The question does not turn upon the fact that the agent is an auctioneer but upon the scope and duration of the agency. While it is said that an auctioneer is the agent of both seller and purchaser for signing the contract, it does not follow that his agency for the one is coextensive in its nature and duration with that for the other. The word "auctioneer" is sometimes used to designate the crier who simply calls for bids and strikes the bargain at an auction sale. His connection with the sale may begin with calling for bids and end with striking the bargain. If that be the only authority given him by seller and purchaser, it may be said that while the power to strike the bargain fairly imports authority to make his work effectual by signing the memorandum necessary to bind the parties, it also implies that that act shall be substantially contemporaneous with the sale and as a part of it. In such a case the agency of the auctioneer is substantially ended with the auction, and his authority to bind either party by a memorandum would not extend beyond that time. And so far as respects the purchaser, the authority of the auctioneer as a usual rule is confined to the actual time of the auction. It is conferred by the bid when accepted, and therefore begins with the fall of the hammer. The technical ground is that the purchaser by the very act of bidding 'calls on the auctioneer or his clerk to put down his name as the bidder, and thus confers an authority on the auctioneer or clerk, to sign his name, and this is the whole extent of the authority.' Shaw, C. J., in Gill v. Bickness, 2 Cush. 355, 358. Such an authority must be exercised contemporaneously with the sale. See Brown, St. of Frauds, sec. 353, and cases cited in the notes.

"But primarily and actively the auctioneer as a rule is the agent of the seller, and as to him his authority is generally more extensive, and may cover a time both before and after the sale. Frequently the property is put into his hands for sale, and all the details are left entirely to him. He is expected to make all the arrangements by way of public advertisement and otherwise, and to act fully at the sale, to receive the deposit from the purchaser and to carry the transaction to the end. Such authority from a seller to an auctioneer does not end with the auction sale but extends beyond it, and until it is revoked by the auctioneer may properly bind the seller by a memorandum signed within a reasonable time."

And in the more recent case of Sweeny v. Brow, 35 R. I., 227, 86 Atl. 115, the Supreme Court of Rhode Island, in an equally well considered opinion, reviewed all the authorities and reached the same conclusion.

Applying the foregoing rule to the facts of this case, we find that there was no evidence that the memorandum in the auctioneer's book was signed by him immediately after the sale. That being true, it was not binding on Martin, the purchaser. On the other hand, if it be conceded, as the circumstances under which the sale was made tend to show, that the auctioneer was not a mere crier but was vested with full authority to advertise and complete the sale, the memorandum which he signed on the next day was sufficient to bind plaintiff, who was the vendor. And, since under the rule prevailing in this state, the vendor is the party to be charged, it might therefore be argued that the memorandum being sufficient as to him was sufficient to take the case out of the statute. If this were a case where the memorandum was binding on both the vendor and purchaser, no acceptance of the memorandum, or other assent by the purchaser, would have been necessary, but where the auctioneer has no authority to bind the purchaser but authority only to bind the vendor, it must appear that the purchaser accepted the memorandum or otherwise assented to the sale. Ullsperger v. Meyer, 217 Ill. 262, 2 L. R. A. (N. S.) 221, 75 N. E. 482, 3 A. & E. Ann. Cas. 1032; Forthman v. Deters, 206 Ill. 159, 99 Am. St. Rep. 145. 69 N. E. 97; Ives v. Hazard, 4 R. I. 14, 67 Am. Dec. 500; Clarke v. Potts, 255 Ill. 183, 99 N. E. 364; Hollingshead v. Morris (Mich.), 137 N. W. 527, 41 L. R. A. (N. S.) 310; Wren v. Cooksey, 147 Ky. 825, 145 S. W. 1116; Evans v. Strat-

ton, 142 Ky. 615, 34 L. R. A. (N. S.) 393, 134 S. W. 1154. Here, the auctioneer did not take the necessary steps immediately after the sale to bind the defendant. The next day he did take the necessary steps to bind plaintiff. The memorandum then signed by him was not delivered to, or accepted by, defendant, nor did he then assent in any manner to the sale. On the contrary, he repudiated the purchase and declined to comply with the terms of the sale. Hence, he was not bound and the trial court should have directed a verdict in his favor.

Judgment reversed and cause remanded for a new trial consistent with this opinion.