## Newman v. Woolley, et al.

(Decided November 23, 1923.)

### Appeal from Woodford Circuit Court.

1. Auctions and Auctioneers—Evidence Held to Show Opposing Bidder was Not a By-bidder.—In an action to rescind a contract of sale and to recover cash payment with interest growing out of sale of land at public auction, evidence held to sustain a finding of the chancellor that person bidding against plaintiff at the sale was not a by-bidder, who would not have been compelled to comply with the terms of his bid if the land had been knocked off to him.

2. Conspiracy—No Cause of Action Created Unless Carried Out or Executed.—The mere entering into an agreement, contract, or even a conspiracy to commit a civil fraud against another, which agreement, contract or conspiracy is never carried out or executed, and no steps to do so are taken, cannot furnish a cause of action in favor of the one against whom the agreement, contract or conspiracy was made.

3. Auctions and Auctioneers—Mere Employment of By-bidder Who Did Not Bid no Ground for Refusal to Comply with Bid.—One who bid in land at public auction could not refuse to comply with his bid and perform his contract merely because of an agreement between the seller and the auctioneer whereby the auctioneer was to bid for the seller up to a certain amount, where such auctioneer made no bid, all the persons actually bidding intending to buy, notwithstanding the sale was advertised "without by-bid, reserve or limit."

EDELEN & McLEOD for appellant.

E. M. WALLACE and ALLEN & DUNCAN for appellees.

Opinion of the Court by Turner, Commissioner—
Affirming.

In 1920 appellees, Mattie L. Woolley and her sister Nannie Lyne, were the joint owners of a tract of something over 430 acres of land in Woodford county. On the 3rd of September, 1920, they entered into a contract with Boliver Bond & Sons of Versailles, Ky., real estate agents, whereby they engaged that firm to advertise, survey and sell at public auction their farm.

Accordingly Bond & Sons, after extensive advertisement, did offer for sale the farm in three tracts on the 27th day of September, 1920. The sale was advertised as a dissolution sale, and to be sold in three tracts, the first tract containing 199 and a fraction acres, the second tract 182 and a fraction acres, and the other tract 54 and a fraction acres.

At the sale appellant was the highest bidder for each of the three tracts, and became the purchaser of the whole at approximately $46,680.00, or about $107.00 an acre. Appellant, conforming to the terms of the sale, paid one-tenth of the purchase price in cash on that day, and entered into a written contract with appellees whereby he agreed on the 1st of March, 1921, to pay 23 1/3% of the contract price, in addition to the cash payment, at which time he was to have possession of the property and a conveyance therefor, and was to execute to the vendors certain purchase money notes for the balance of the consideration.

The sale was advertised to be held, and was announced at the time as being held "Without by-bid, reserve or limit," and shortly thereafter appellant, claiming to have learned that at the sale the only bids on the property, or any part of it, other than his own, were made by a by-bidder under authority of the vendors, on the first day of November, 1920, notified the vendors by letter of these things, and of his purpose not to be bound by the sale. He tendered back to them all rights, benefits and privileges to which he had become entitled as purchaser, and demanded a rescission of the written contract, and a return to him of his cash payment.

The appellees not having responded to this communication, on the 13th day of November, 1920, he instituted this equitable action seeking a rescission of the contract of sale, and for a judgment against the vendors therein for his cash payment with interest. The petition alleges

in substance that the lands were advertised for sale without by-bid, reserve or limit, and that it was so announced again at the sale, and that plaintiff upon such terms became the purchaser at such sale of the three tracts of land; that he thereafter on that day entered into the written contract of sale, but was induced to bid for the lands and to execute the written contract by the false and fraudulent representations of the defendants that such sale would be, and was being made, without by-bid, reserve or limit, when in fact the defendant vendors had a by-bidder to make bids on each and every parcel of said land, and the sale was had with by-bids and with reserve and limit, and that no bids on the land, or any part thereof, were made, except by plaintiff, and by a by-bidder authorized and employed by defendants. That he first discovered about November 1, 1920, the fraud that had been practiced upon him, and at once notified defendants in writing, as above stated.

The defendants in the first paragraph of their answer and counterclaim denied the material allegations of the petition, and the same having been filed after the first day of March, 1921, at which time, under the terms of the contract of sale, appellant was to pay an additional 23 1/3% of the consideration, they in a second paragraph set up that fact and asked for a specific performance of the contract of sale, and asserted a lien for the amount of such payment due on the first of March, and asked an enforcement of it.

Thereafter the plaintiff filed an amended petition wherein he alleged that Mrs. Woolley, one of the vendors of the land in question, before the sale of the three tracts of land, had authorized, empowered and directed Boliver Bond, a member of the real estate firm conducting the sale, to represent her at the sale, and to bid for her and on her behalf enough to make the land bring $100.00 per acre; that this was a secret reservation upon her part of which he had no knowledge, and which operated as a fraud upon him and the public.

After the issues were all made up and the evidence taken, the chancellor dismissed the plaintiff's petition, and on the counterclaim adjudged a specific performance, and the plaintiff has appealed.

The evidence discloses that at the sale there were in fact but two bidders on either of the three tracts of land, they being appellant and one Schoberth, the latter being

a farmer and stocktrader who had theretofore sold his farm or farms and was looking out for another; that Bond, who had been authorized by Mrs. Woolley to bid for her so as to make the land bring $100.00 per acre, never at any time made a bid, it appearing that each of the three tracts of land separately brought $100.00 per acre or more.

The first contention of appellant's counsel is that certain facts and circumstances in evidence point to an agreement between Bond, the agent of the vendors, and Schoberth, the other bidder, by which the latter was only a by-bidder, and would not have been compelled to comply with the terms of his bid if any one of the three tracts had been knocked off to him. Without going into the details of the evidence it may be admitted there are one or two circumstances calculated to arouse that suspicion; but Bond and Schoberth each testified explicitly there was no such agreement or understanding between them, and Schoberth testifies positively he was looking out for a farm, had after the advertisement gone and examined this farm and made up his mind to become a bidder on it, and that he in fact bid only for himself, and expected to and would have complied with the terms of the sale if he had been the highest bidder. The chancellor below accepted this evidence as satisfactory on this issue, and we see no reason to disturb that finding.

The evidence shows that Miss Lyne, one of the vendors, was determined to sell her interest in the property, while Mrs. Woolley, the other, was desirous of preventing a sacrifice of it, and with that end in view authorized Boliver Bond to bid for her as the purchaser if the property sold for less than $100.00 per acre. In that way she would have become the purchaser of her sister's undivided interest, and would have prevented the sale of her own interest at a less price than she thought it was worth. It is therefore the urgent contention of appellant that this arrangement between Mrs. Woolley and Bond, her agent who had charge of the sale, was in violation of the terms of the advertisement, under which the sale was had, and authorized a rescission upon the application of the purchaser. The response to this by the appellee is (1) that this arrangement between one of the joint owners and the auctioneer was only for the purpose of preventing a sacrifice of that joint owner's interest in the property, and to prevent a sale of it for a

less price than she conceived it to be worth, and at which price she was willing to become the purchaser of the other joint interest; and (2) that even though such an agreement between the one joint owner and the auctioneer, if carried out, would have operated as a fraud upon the purchaser, where in fact that arrangement was not executed, and the auctioneer did not exercise his authority to bid for such vendor, it did not vitiate the sale or authorize a rescission by the purchaser.

Although there is good authority for the first proposition stated, it appears to be unnecessary to determine that question. But on the second proposition we see no room for a difference of opinion.

Generally speaking it would seem to be clear that the mere entering into an agreement, contract, or even a conspiracy, to commit a civil fraud against another, which agreement, contract or conspiracy is never carried out or executed, and no steps to do so are ever taken, cannot furnish a cause of action in favor of the one against whom the agreement, contract or conspiracy was made. It is admitted that at the time of the sale, and when the contract was executed, appellant had no notice of this authorization by Mrs. Woolley to Bond, and it could not therefore have in any way affected his bidding at the sale.

The very basis of the right of a purchaser at such a sale to refuse to comply with his bid because of a by-bid or puffer's bid is that such a bid was made whereby he, in the excitement, was induced to bid still more; but it is difficult to understand how he could have been so induced when there was no bid by such by-bidder or puffer.

The very language in which the text writers state the proposition shows clearly there must be an actual bid by the by-bidder before the purchaser may take advantage of it. For instance, Sugden on Vendors, vol. 1 (14th edition, page 14), in stating the proposition, says:

"Where it is stated that the estate is to be sold without reserve, the sale will be void against a purchaser *if any person be employed as a puffer, and actually bid at the sale.*"

Warvelle on Vendors, vol. 1, second edition, page 298, states the proposition thus:

"It is not an uncommon practice to announce a sale 'without reserve;' and while this would probably be implied by law where no reservation was made by the vendor, yet when so stated it has the effect of creating

an express contract between the vendor and the highest *bona fide* bidder that the sale shall be so conducted. If under these circumstances *a bid is made by or on behalf of the vendor* he thereby becomes responsible in damages to the highest bidder for a breach of the conditions of sale, or the sale may be avoided at the option of such purchaser."

It appears to be conclusive from these authorities that to entitle a purchaser to a rescission there must have been not only an employment by the vendor of a by-bidder or puffer, but there must have been an actual bid for the vendor by such by-bidder.

Judgment affirmed.