## Burdon v. Seitz.

### (Decided December 19, 1924.)

### Appeal from Jefferson Circuit Court (Common Pleas, Fourth Division).

1.  Auctions and Auctioneers—Evidence Held to Show By-bidding.— In action for damages by reason of defendant's refusing to complete bid at public auction, evidence held sufficient to show that there was a by-bidder at sale for purpose of puffing price.
2.  Auctions and Auctioneers—Purchaser May Repudiate Bid Because Puffer was Employed.—Purchaser at auction sale purporting to be without reserve may repudiate his bid if vendor or his agent in charge employed by-bidders or puffers, who actually bid with understanding that they were not to take property if it should be knocked off to them.

BENJAMIN F. GARDNER for appellant.

HENRY M. JOHNSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellant and plaintiff below, E. O. Burdon, owned a farm in Jefferson county, Kentucky, containing 175 acres. He placed it in the hands of Blankenbaker & Bowles, real estate agents at Jeffersontown, Kentucky, for sale, and they advertised its sale at public auction to the highest and best bidder, held on September 27, 1922, at which sale the land was knocked off to the appellee and defendant below, C. W. Seitz, at the price of $65.50 per acre. He declined to carry out the contract and the land was again advertised for public sale by the same agents for November 1, 1922, at which time it brought only $51.00 per acre.

This action was filed by plaintiff against defendant in the Jefferson circuit court to recover damages for the latter's violation of his contract of purchase at the first auction sale. Defendant denied that he made the bid of

$65.50 per acre at that sale and, therefore, claimed that he never became the purchaser of the land. In another paragraph he defended on the ground that plaintiff through and by his agent, Bowles, who was present and conducting the sale, arranged with a by-bidder to puff the price of the land up to a certain point with the understanding that he should not be required to accept it if knocked off to him. Other defenses in other paragraphs were also relied on, but we do not regard them as material. If, however, it were otherwise, it is unnecessary to refer to or consider them, because of our conclusions hereinafter expressed.

Appropriate pleadings made the issues and, under the instructions of the court, the jury returned a verdict in favor of the defendant, followed by a judgment dismissing the petition, which the court declined to set aside on a motion for a new trial, and plaintiff appeals.

The decisive questions in the case are: (1), whether there was a by-bidder at the first sale of the land, and (2), if so, did that give the defendant the right to repudiate and refuse to perform the contract, assuming that he made the bid which the auctioneer accepted? It will at once be seen that the first question is one of fact, while the second is strictly a legal one.

As to the first one, we think the evidence amply sufficient to justify the verdict in answering it in the affirmative. The agent, Bowles, testified that he approached a Mr. Sweeney, who attended the sale, and asked him if he intended to bid on the land, receiving the answer from Sweeney, "I may;" whereupon Bowles asked him, "Well, will you make it bring a certain price, whether you want it to go that high or not," to which Sweeney, according to Bowles, agreed, and he says that the price fixed was $11,000.00, but Sweeney testified that it was $11,300.00. He also testified that, acting upon his agreement with Bowles, he bid on the land and kept track of his bids with a pencil and paper in order to know when to quit bidding under his promise, and that when he bid $65.00 per acre he stopped, although that bid was slightly more than $11,300.00. He furthermore testified that, under his promise to Bowles, he was to "drop out after he had bid the amount agreed upon," and that "I was just running it up for Mr. Bowles, to be plain."

It is contended that the jury was unauthorized under that evidence to find that Sweeney was a by-bidder,

but plainly that contention is without merit. Neither can we agree with counsel that the agreement as testified to should be construed as an employment of Sweeney by Bowles to bid the price fixed for the latter. There is no evidence in the case that Bowles either desired or expected to buy the land at that sale or that he would have taken it if it had been knocked off to Sweeney. The construction contended for is far-fetched and, we think, unfounded; which brings us to the second and legal question in the case.

There is some conflict in the cases as to the effect of by-bidding or puffing at public auctions. The law courts of England in an early day held that no matter what the purpose was in employing by-bidders, the purchasers could reject the sale and refuse to comply with it. The English chancery courts adopted a different rule and held that if the employment of by-bidders was only to prevent a sacrifice of the property, and that the vendor acted in good faith and the purchaser was not required to pay more than the reasonable value of the property he could not repudiate his contract but would be required to perform. Later an act of Parliament repealed the rule promulgated by the chancery courts. Some American opinions have followed the rule announced by the chancery courts of England, but the great majority of American jurisdictions adopt the rule announced by the English common law courts and hold that the purchaser at an auction sale purporting to be without reserve may repudiate the contract and decline to perform it if the vendor of the property or his agent for whose acts he was responsible employed by-bidders or puffers who actually bid upon the property with the understanding that they were not to take it if it should be knocked off to them.

The present, as well as the past, condition of the law upon the subject is fully stated in 2 R. C. L. 1129-30, paragraphs 14 and 15. In stating the present prevailing rule upon the subject the text in paragraph 15 says: "The great weight of modern authority is to the effect that the employment of a puffer is illegal, and constitutes sufficient ground for the avoidance or rescission of a sale, irrespective of whether such employment was merely for the purpose of preventing a sacrifice of the property or for the purpose of enhancing the price above the true value thereof." To the same effect is the

text in 6 Corpus Juris, pages 832-3, where the rule, as administered by the great majority of courts, is thus stated: "In the United States it is clear, both upon principle and the weight of the authorities, that, where a sale is advertised or stated to be without reserve, there is an implied guaranty that the property is to be sold to the highest bidder, and each bidder has the right to assume that all previous bids are genuine, and the seller in substance so assures him; and hence the secret employment, by the seller, of puffers is equivalent to a false representation, and renders the sale voidable at the option of the purchaser," and that text is followed by the phrase, "provided that he is prejudiced thereby;" but the cases cited in support of that statement are the few ones that follow the ancient English chancery rule upon the subject. See annotations to the case of Anderson v. Wisconsin Ry. Co., 131 Am. St. Rep. 462, annotations beginning on page 488.

The reason given for the majority rule is that the employment of by-bidders is not only against the soundest principles of public policy, but is a fraud upon the purchaser, and that such secret arrangements are offensive to fair dealing, which it is the purpose and intent of the law to administer between litigants. And an examination of the texts referred to, as well as the cases cited in the notes, will show that the purchaser has the right to repudiate the contract under such circumstances notwithstanding he may not have bid more than the property was worth, since he was entitled to free, fair, open and actual competition in his bidding, and to procure it for only the price that such character of bidding would result in.

But it is argued by counsel for plaintiff that this court aligned itself with the old English chancery rule in its opinion in the case of Latham's Executors v. Morrow, 6 B. Mon. 630; but an examination of that opinion will show that it was based exclusively upon equitable principles entirely wanting in this case, and that the opinion therein has not the remotest bearing upon the facts presented herein. There the purchaser at the auction sale executed the contract and took possession of the land and resided thereon for as much as five years, and in the meantime its value had reduced to about 50 per cent of the price bid by the vendee. He then came into equity and asked a rescission of the contract and the

court applied the well known equitable principles in granting that remedy and denied him the relief he sought, saying: ''In view of these principles, and of the doubtful nature of the inquiry complained of, taken in connection with the evidence of long acquiescence and satisfaction with the contract, and the suspicion fairly arising, that the complaint of fraud would never have been urged but for the general depreciation in the price of land, and the fact that there is not even an allegation of recent discovery, when the complaint is at last made, we conclude, without deciding the abstract question as to the right of the vendor at auction, to employ a single by-bidder to prevent a sacrifice below a fair and fixed price, that this contract should not be rescinded on the sole ground of fraud." From that excerpt, it will be seen that the court expressly refrained from deciding the question now under consideration and rested its opinion upon equitable principles governing the right to an enforced rescission.

Moreover, in the very recent case of Newman v. Wooley, 201 Ky. 139, the precise question here presented was before this court, but the purchaser at the auction sale was refused relief, not because he was not entitled to it if there had been by-bidding, but because it was found from the record that the vendor had done nothing more than to negotiate for such bidding, but which was never actually engaged in at the sale. It was recognized in that opinion that if there had been such bidding the purchaser could have availed himself of it in defense of any action brought against him by the vendor looking to the enforcement of the contract. The court submitted to the jury the defense now under consideration in an instruction which is not seriously complained of and which we conclude conformed to the proper practice.

For the reasons stated, the judgment is affirmed.