**James C. NICHOLSON and Sarah S. Nicholson, Appellants,**

v.

**Kennedy H. CLARK, Jr., River Realty, Inc. d/b/a River Realty and Auction Company and Harold E. Helm, II, Appellees.**

**No. 89–CA–1183–MR.**

Court of Appeals of Kentucky.

June 15, 1990.

Rehearing Denied Oct. 12, 1990.

Discretionary Review Denied by Supreme Court March 6, 1991.

Allen K. Gailor, Louisville, for appellants.

Gary D. Garrison, Edward H. Bartenstein, Walter J. Swyers, Jr., Louisville, for appellees.

Before EMBERTON, HOWARD and WILHOIT, JJ.

HOWARD, Judge.

The appellants appeal from an order of the Jefferson Circuit Court dismissing the appellants' complaint in which they sought specific performance of an auction bid and damages.

The appellants, James C. Nicholson and Sarah S. Nicholson, are co-owners of certain real property at 125 South Seventh Street in Louisville, Kentucky. On June 3, 1988, the Nicholsons entered into an auction listing agreement with the appellee, River Realty, Inc. d/b/a River Realty and Auction. River Realty is owned by the appellee, Harold E. Helm, II, and Robert Haley. Helm and Haley are both licensed auctioneers.

Under the June 3, 1988 agreement, River Realty was to advertise, promote and auction the Seventh Street property. A "reserve" price of $200,000 was established and a buyer's premium of 10% was to be paid by the buyer. The agreement provided that if the final bid did not reach or exceed the reserve price, River Realty would have a 30-day exclusive listing. It further provided that when the bidding, plus the buyer's premium, reaches $200,-000, the auctioneer had the authority to declare that the property was to be sold at absolute auction and that there would be a new owner at the conclusion of the bidding. The Nicholsons paid $2600 for advertising and promotional expenses.

An auction of this and other properties was held on June 28, 1988. The appellee, Kennedy H. Clark, Jr., an employee of Liberty National Bank, was a friend of Helm and was asked by Helm to attend the auction. Clark was to place bids on the properties offered if there was no bidding by the audience in order to generate more favorable prices. Thus, Clark was a "by-bidder" or fictitious bidder who had no real intention to buy. Clark stated that he was given no instructions about how or when to bid.

Haley, acting as the auctioneer, started the bidding on the Seventh Street property at $200,000. After a few moments of no bidding, Clark made a bid of $200,000. Clark's bid was the only one received and

Haley declared the property sold or "knocked down" to him as the high bidder. Helm then asked Clark if he had intended to buy the property for himself. When Clark said "no," Helm informed Haley and Haley announced to the audience that he had made a mistake by knocking the property down. The bidding was re-opened and the highest offered bid was $175,000. The Nicholsons did not accept this lower bid.

The Nicholsons subsequently demanded that Clark and River Realty pay the $200,000 bid price for the property. Clark and River Realty refused and, on August 9, 1988, the Nicholsons instituted this action. In the complaint and amended complaint, the Nicholsons sought a declaration that Helm, River Realty and Clark, as the Company's agent, are the successful bidders for the property and damages of $200,000 plus the buyer's premium. In the alternative, the Nicholsons asked that another auction be held and that they be awarded the difference, if any, between the sale price and Clark's bid price. Damages were also demanded for violation of the Consumer Protection Act, KRS 367.110, *et seq.*

The appellees filed a motion to dismiss on August 23, 1988. The appellees maintained that because no memoranda of sale was ever executed by either Clark or any of the appellees, no action could be brought due to the statute of frauds, KRS 371.010(6).

On April 27, 1989, the trial court issued an order dismissing the complaint. The Nicholsons' request that Clark's bid be enforced was dismissed on the grounds of the statute of frauds. The trial court dismissed the claim under the Consumer Protection Act because the Nicholsons failed to show "any ascertainable loss" which is required under that statute.

The Nicholsons contend that the statute of frauds is not applicable to this case.

█ There are generally two methods for a seller to offer property for sale at an auction: either "with reserve" or "without reserve." If the seller or vendor wishes to fix a minimum price below which the prop-

erty will not be sold or reserves to himself the right to bid, the sale is said to be "with reserve." *See* 7 Am.Jur.2d *Auctions and Auctioneers* § 14.

> In the absence of a sale 'without reserve,' the general rule is that a seller of property at auction or the auctioneer may withdraw the property from sale at any time before the acceptance of a bid, on the theory that a bid constitutes a mere offer for a contract and until it is accepted there is no contract between the parties.... The words 'without reserve' as used in auctions are words of art, as showing prospective bidders that the property will actually go to the bidder offering the highest price, and the seller may not nullify this purpose by bidding himself or through an agent, or by withdrawing the property from sale if he is not pleased with the bids.

7 Am.Jur.2d *Auctions and Auctioneers* § 17.

█ The auctioneer at an auction sale is considered an agent of both the seller and the buyer. *Parke v. Spurlin*, Ky., 268 S.W.2d 33 (1954).

> Strictly speaking, a 'by-bidder' is one employed by the seller or his agent to bid on the property with no purpose to become the purchaser, so that the bidding thereon may be stimulated in others who are bidding in good faith, while he is safe from risk because of a secret understanding that he shall not be bound by his bids.

*Osborn v. Apperson Lodge, Free and Accepted Masons No. 195*, 213 Ky. 533, 281 S.W. 500, 502 (1926). *Accord Manuel v. Haselden*, 206 Ky. 796, 268 S.W. 554 (1925). A person fitting the description of a by-bidder has also been referred to as a "puffer," "sham bidder," "copper," "decoy duck," or a "white bonnet." 7 Am.Jur.2d *Auctions and Auctioneers* § 22.

█ Use of a by-bidder in an auction sale without reserve is said to violate public policy and to be a fraud on the purchaser and therefore the purchaser may void the

sale. *Burdon v. Seitz*, 206 Ky. 336, 267 S.W. 219 (1924); 7 Am.Jur.2d *Auctions and Auctioneers* § 23.

■ When the seller reserves a right in himself to bid, it generally is not a fraud to use a by-bidder. *See* 7 Am.Jur.2d *Auction and Auctioneers* § 23. This is so because one who has full knowledge cannot be defrauded. *See* 6 A. Corbin, *Contracts* § 1469. However, there is authority that for an auction to be with reserve, that fact must be announced to the audience prior to the bidding. 7 Am.Jur.2d *Auctions and Auctioneers* § 14. Haley did not make such an announcement prior to the opening of bidding on the Nicholsons' property. Thus, under this view, the auction was without reserve.

■ However, a brochure available to the persons attending the auction contains a provision which states in part that the auctioneer reserves the right to reject any bid not in the seller's interest and the right to enter any bidding on behalf of the seller except in the case of absolute offerings. Under the Restatement, *Contracts 2d*, § 28(2), bids at an auction are said to embody the terms of any advertisement, posting or other publication of which the bidders are or should be aware subject to any modification announced when the property is put up.

Thus, there is a conflict in the authorities in regard to whether enough was done to make the auction with reserve. However, we need not resolve the matter. The Nicholsons have not produced any authority for the position that a *seller* was damaged by the use of a by-bidder and thus, specific performance should be enforced against the purchaser. Moreover, we believe the instant case is resolved by the statute of frauds.

KRS 371.010 states in pertinent part as follows:

No action shall be brought to charge any person:

.    .    .    .    .

(b) Upon any contract for the sale of real estate ... unless the promise, contract, agreement ... or some memoranda or note thereof, be in writing by the party to be charged therewith, or by his authorized agent.

■ The statute of frauds, of course, applies to sales of land at an auction. *See Parke, supra; Melheiser v. Central Trust Co.*, 237 Ky. 757, 36 S.W.2d 377 (1931); 7 Am.Jur.2d *Auctions and Auctioneers* § 30. Thus, a memorandum of sale should have been executed either by the vendors, *City of Murray v. Crawford*, 138 Ky. 25, 127 S.W. 494 (1910), or the auctioneer, *Martin v. Mathis* 184 Ky. 20, 211 S.W. 198 (1919).

■ Because no memoranda of the sale to Clark was ever made, any contract of sale is not enforceable. The Nicholsons assert various reasons why the statute of frauds should not apply in this case.

■ The Nicholsons argue that they, not Clark, are the parties to be charged and therefore, Clark and the other appellees are not entitled to protection of the statute. But, the term "party to be charged" refers to the person against whom one is attempting to enforce the contract, or his lawfully authorized agent. *Restatement, Contracts 2d* § 135. 72 Am.Jur.2d *Statute of Frauds* § 364. This person would be Clark or the auctioneer, Haley, as his agent, and neither party signed a memoranda of sale.

■ The Nicholsons further argue that the auction agreement signed by them, and the bidder's registration form and the bidder's contract signed by Clark, when considered together, constitute a sufficient writing under the statute. A memorandum of sale is sufficient under the statute of frauds if it shows all of the essential terms of the contract either by itself or in reference to other writings. *Antle v. Haas*, Ky., 251 S.W.2d 290 (1952). The other writings must refer to the memoranda and the contract terms must be ascertainable without resort to parol evidence. *Id.* The writings discussed by the Nicholsons do

not refer to each other and can only be connected by parol evidence. Consequently, these writings are not sufficient to satisfy the statute.

▇▇▇▇ The Nicholsons also maintain that the appellees are estopped from using the statute of frauds as a defense. The doctrine of estoppel may, under the proper circumstances, prevent a party from employing the statute of frauds. *Smith v. Ash*, Ky., 448 S.W.2d 51 (1969).

> The vital principle is that he who by his language or conduct leads another to do, upon the faith of an oral agreement, what he would not otherwise have done, and changes his position to his prejudice, will not be allowed to subject such person to loss or injury, or to avail himself of that change to the prejudice of such other party. The party asserting the estoppel must, therefore, show affirmatively that he has done or omitted some act or changed his position to his prejudice in reliance upon the acts, conduct (active or passive), language, or representations of the person sought to be estopped which he would not have done except for such acts, language or conduct.

73 Am.Jur.2d *Statute of Frauds* § 567.

We do not believe estoppel applies in this case. There is no evidence to show that the Nicholsons in any way changed their position because of something said or done by the appellees.

▇▇▇ The Nicholsons next contend that they had a valid cause of action under KRS 367.220(1). That statute provides in pertinent part that:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice declared unlawful in KRS 367.170, may bring an action ... in ... circuit court.

The Nicholsons argue that the $2,600 they paid to River Realty for advertising and promotional expenses was wasted due to the appellees' conduct. They further claim that the cancellation of Clark's bid chilled the legitimate bidders and inhibited them from making an acceptable bid.

The Nicholsons potentially face a number of difficulties in fitting this case into KRS 367.220, however, we will only discuss the issue addressed by the trial court. First, advertising and other promotion was done by River Realty to encourage the sale of the Nicholsons' property. Second, although the Nicholsons' claim that the crowd was "chilled" from making an acceptable bid, it is clear that no one was willing to bid over $200,000. Whether any one would have bid more than $175,000, the highest bid received after Clark's bid was withdrawn, if Clark had never bid, is a matter of conjecture and speculation. Thus, the Nicholsons have not and cannot show that they sustained an "ascertainable loss" under KRS 367.220.

The judgment is affirmed.

WILHOIT, J., concurs.

EMBERTON, J., concurs in result only.

EMBERTON, Judge, concurring.

I concur in result only. Although KRS 355.2–328 addresses the matters of "by-bidding," "auction with reserve" and "auction without reserve," it seems intended to relate only to "goods;" however, I doubt the wisdom of a distinction between goods and real property insofar as we might be concerned, and as discussed in the majority opinion. Even so, I agree with the majority that the Nicholsons, as sellers, are not in position to complain regarding a loss resulting from the use of a by-bidder—an arrangement created by their agent, ostensibly for their benefit.